### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:92-cr-20127-TLP-1 |
| v. | ) | |
| | ) | |
| DERRICK TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Derrick Taylor moves pro se for compassionate release.  (ECF No. 9.)  And the Government responded.  (ECF Nos. 14 & 22.)  As explained below, this Court finds that Defendant is not entitled to compassionate release.  The Court therefore **DENIES** Defendant's motion.

### BACKGROUND

In April 1992, Defendant, at age 26, committed a series of crimes with his younger brother and co-defendant David Poindexter who was age 18 at the time.  Defendants robbed a bank while wearing ski masks and displaying handguns.  (Presentence Investigation Report ("PSR") at Page 2.)  They took $42,098 from the bank's vault and escaped in a stolen vehicle, which led to a police chase.  (*Id.*)  During the chase, Defendants rammed into a car with three occupants.  (*Id.* at Page 3.)  The collision killed the driver of the other car and injured the other two passengers.  (*Id.*)  Two people saw the accident and stopped their truck to help.  (*Id.*)  Defendants then pulled their guns on them, shooting the driver through the window and injuring the passenger.  (*Id.*)

Defendants then ran to an apartment complex located on a Naval Air Station in Millington, Tennessee. (*Id.* at Page 4.) Defendants saw a woman and her two children playing in a yard. (*Id.*) Defendants said they were injured and needed help. (*Id.*) They then grabbed the mother and her four-year-old child and forced them inside an apartment at gun point, leaving her one-year-old daughter outside alone. (*Id.*) As Defendants tried to escape the apartment, officials apprehended them without further incident. (*Id.*)

The federal grand jury issued a nine-count indictment charging Defendant with aiding and abetting bank robbery, aiding and abetting death incident to bank robbery, possession of a firearm during and in relation to robbery, aiding and abetting; assault with attempt to commit murder on special maritime and territorial jurisdiction, aiding and abetting kidnapping, aiding and abetting; possession of a firearm during and in relation to kidnapping, and possession of a firearm while under indictment. (ECF No. 5.)

After trial in November 1993, the jury found Defendant guilty on seven counts and not guilty on one count. (PSR at Page 1). The Court sentenced Defendant to a life in prison plus twenty-five years. (ECF No. 6.) Defendant later petitioned to reduce his sentence, and the Court denied that motion. (ECF Nos. 2 & 4.)

In May 2020, Defendant applied for compassionate release with the Bureau of Prisons (BOP) seeking a sentence reduction. (ECF No. 18 at PageID 204.) On the application, Defendant checked a box stating that he requested compassionate release "based on incapacitation of a spouse or registered partner where [he is] the only available caretaker." *Id.* The BOP denied his application. And now Defendant moves pro se seeking compassionate release based on the COVID-19 pandemic. (ECF No. 9.)

In his motion, Defendant claims he is at an increased risk of contracting the virus and is living in prison quarters with many inmates who cannot take preventive measures against contracting the virus. (*Id.*) He requests either immediate release or to serve the remainder of his sentence at home. (*Id.*) He argues that (1) he is significantly vulnerable to the virus because of his age and because he suffers from asthma; (2) since his incarceration he has rehabilitated; (3) he is not a danger to the community; and (4) the sentencing factors weigh heavily in his favor for release. (ECF Nos. 9 & 18.)

The Government responded arguing that (1) Defendant has not exhausted his administrative remedies; (2) Defendant has identified no "extraordinary and compelling reason" to justify compassionate release; (3) Defendant fails to show that he is not a danger to the safety of the community; (3) the sentencing factors weigh against release; and (4) the BOP responded to COVID-19 by protecting inmates. (ECF No. 14.)

## STANDARD OF REVIEW

The Court begins with when and under what circumstances it may modify a sentence. A sentencing court lacks inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Even so, 18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment where "extraordinary and compelling reasons warrant [modification]." Motions under that section are known as "motions for compassionate release." *United States v. McCann*, No. 13-cr-52, 2020 WL 1901089, at *1 (E.D. Ky. Apr. 17, 2020).

"The compassionate release provisions were … intended to be a safety valve to reduce a sentence in the unusual case in which the defendant's circumstances as so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner."

*United States v. Poole*, 472 F. Supp. 3d 450, 453–54 (W.D. Tenn. 2020) (citing S. Rep. 98-225,

at 121 (1983)) (internal quotation marks omitted).

In the First Step Act of 2018, Congress amended that statute to allow a prisoner to move

for compassionate release on his own behalf.  Pub. L. No. 115-391, 132 Stat. 5194, 5239.

Congress's intent was to "[increase] the use and transparency of compassionate release."  *Id.*

That section now provides that

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion
> of the defendant after the defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment . .
> . after considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that–
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by
> the Sentencing Commission …

18 U.S.C. § 3582(c)(1)(A).

And in the United States Sentencing Commission Guidelines Manual, the Sentencing

Commission has published a policy statement addressing the standards for compassionate

release.  *See* U.S.S.G. § 1B1.13 ("Policy Statement").  That Policy Statement tells courts that,

unless it finds that "the defendant is not a danger to the safety of any other person or to the

community," it should not reduce a term of imprisonment under § 3582(c)(1)(A).  (*Id.*)  The

Application Notes to the Policy Statement describe four categories of "extraordinary and

compelling reasons" that may justify compassionate release under § 3582(c)(1)(A): (A) the

medical condition of the defendant; (B) the age of the defendant; (C) family circumstances; and

(D) other reasons.  *See* U.S.S.G. § 1B1.13, cmt. N.1(A)–(D).

Recently, the Sixth Circuit explained that before granting compassionate release, a

district court must (1) find that extraordinary and compelling reasons warrant a sentence

reduction, (2) ensure that a reduction accords with applicable policy statements issued by the

Sentencing Commission, and (3) consider all relevant sentencing factors listed in 18 U.S.C. §

3553(a).  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021); *United States v. Jones*, 980

F.3d 1098, 1101 (6th Cir. 2020).  That said, the Sixth Circuit made clear that when an inmate

brings a motion on his own behalf, the district court need not consider the § 1B1.13 policy

statement.  *Elias*, 984 F.3d at 519–20.  Instead, the district court has full "discretion to define

'extraordinary and compelling' on their own initiative," and the court cannot use the Policy

Statement as an independent basis to deny a defendant-filed motion.  *Id.*

Finally, Section 3582(c)(1)(A) requires defendants to first exhaust their administrative

remedies with the BOP before seeking relief in the district court.  *United Sates v. Alam*, 960

F.3d 831, 833 (6th Cir. 2020).  A prisoner, therefore, may move for compassionate release in

federal court after he has either (1) "fully exhausted all administrative rights to appeal a failure

of the Bureau of Prisons to bring a motion" on his own behalf, or (2) after "the lapse of 30 days

from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is

earlier."  18 U.S.C. § 3582(c)(1)(A).

Even though this exhaustion requirement does not implicate subject-matter jurisdiction, it

remains a mandatory condition.  *Alam*, 960 F.3d at 833.  If the Director of the BOP does not

move for compassionate release, a prisoner may take his claim to court by moving for it only if

he first "fully exhausts all administrative rights to appeal" with the prison or waits 30 days after

his request to the prison.  *Id.* at 833–34 (quoting 18 U.S.C. § 3582(c)(1)(A)).  And defendants

bear the burden of proving they have exhausted their administrative remedies and are entitled to

5

compassionate release.  *United States v. McDonald*, No. 94-cr-20256-1, 2020 WL 3166741, at

\*3 (W.D. Tenn. June 8, 2020) (citing *United States v. Ebbers*, No. 02-cr-1144, 2020 WL 91399,

at \*4 (S.D.N.Y. Jan. 8, 2020)).

This exhaustion requirement serves the important policy of orderly processing by

preventing prisoners from charging straight to federal court without properly vet their claims.

*Alam*, 960 F.3d at 835.  It also allows the prison administrators to prioritize the most urgent

claims and to investigate the gravity of the conditions supporting compassionate release and the

likelihood that the conditions will persist.  *Id*.

With these standards in mind, the Court will now address the merits of Defendant's

motion.

## ANALYSIS

### I.    Exhaustion

The Court will first address whether Defendant exhausted his administrative remedies.

Defendant provided documentation of his BOP request (ECF No. 18), and the Government did

not dispute that he properly exhausted.  (ECF No. 23.)  But the Court also notes that Defendant

petitioned the BOP for release on different grounds than he gives here.  With the BOP,

Defendant submitted a form request and checked the box for "the incapacitation of a spouse or

registered partner" for whom Defendant is the only caretaker.   (ECF No. 18 at PageID 204.)  He

gave no further explanation for his request.  (*Id.*)  But here, he never mentions an incapacitated

spouse or partner.  Even so, the Court assumes Defendant properly exhausted, as it is undisputed.

### II.    Extraordinary and Compelling Circumstances

Next, the Court will address whether Defendant presents extraordinary and compelling

circumstances to justify release.  Defendant moves the Court for compassionate release arguing

his age and medical condition, combined with the BOP's failure to mitigate the spread of

COVID-19, places him at an increased risk of contracting a severe case.  (ECF No. 9.)

Defendant also asserts his rehabilitation efforts while incarcerated support compassionate

release.  *Id.*  And, as mentioned above, Defendant argued to the BOP that he had an incapacitated

spouse or partner who needed his care.  (ECF No. 18 at PageID 204.)

As for COVID-19, Defendant argues that his age of fifty-four, along with asthma and a

high rate of infection within the prison system, give him a heightened risk of catching a severe

case of COVID-19.  (ECF No. 9 at PageID 120–24.)  For all that, Defendant's request lacks

information about alleged underlying health conditions.  He fails to include specifics about his

condition or about the adequacy of medical care in his facility.  He attaches no medical records

to prove the accuracy of his asthma claim.  In the end, he provides little support for his request

here.

In contrast, the Government contends that Defendant's reliance on the pandemic still

fails to show "extraordinary and compelling reasons" for release  (ECF No. 14 at PageID 171.)

And the Government asserts that asthma, without other medical conditions, is not enough to

reduce Defendant's sentence.  (*Id.*)  What is more, the Government emphasizes that the BOP has

a detailed protocol for responding to the COVID-19 pandemic, which aims to ensure that

inmates stay protected from exposure and receive the medical care they need.  (*Id.* at 174–75.)

Defendant alleges that he has asthma, and the Centers for Disease Control has recognized

that individuals suffering from moderate to severe asthma *might* be at an increased the risk of

severe illness from COVID-19.[1]   But the Court finds that Defendant fails to show that his

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 12, 2021).

asthma is moderate to severe.  Plus this factor alone does not justify release given the efforts the

BOP has taken to reduce the spread of the virus.[2]  The Court also notes that Defendant is only

fifty-four years old and is not in an age range that places him at high risk.  In sum, Defendant

fails to show that his health and the possible exposure to Covid-19 present extraordinary and

compelling circumstances justifying compassionate release.

As for the incapacitation of Defendant's spouse or registered partner, Defendant raised

this issue with the BOP, but did not raise it with the Court.  (ECF 18 at PageID 204).  And he

provided no explanation or documentation to support that request; as such, it provides no basis

for compassionate release here.

Finally, the Court recognizes and applauds Defendant's rehabilitation efforts.  To his

credit, Defendant has had academic success while incarcerated.  (*See* ECF No. 9 at PageID 147–

150.)  The Court commends him for his progresss.  The Court also applauds Defendant's

mentorship of fellow prisoners and leadership role at his job.  (*See* ECF No. 9 at PageID 111–12)

That said however, this Court finds that Defendant's rehabilitation is not so extraordinary and

compelling to support compassionate release here.  Even when coupled with the chance he might

get COVID-19, the Court finds that his record in prison are not so extraordinary and compelling

to warrant release.

All in all, Defendant has not shown extraordinary and compelling reasons to justify

compassionate release.

---

[2] *See* https://www.bop.gov/coronavirus/ (last visited Mar. 12, 2021).

8

**III.      18 U.S.C. § 3553(a) Sentencing Factors**

And even if the Court were to find extraordinary and compelling reasons to justify

release, the Court would still deny Defendant's motion based on the § 3553(a) sentencing

factors.  These factors include

(1) the nature and circumstances of the offense and the history and characteristics
of the defendant;

(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most
effective manner.

18 U.S.C. § 3553(a).

In reviewing the record, the Court finds that the nature and circumstances of Defendant's

crimes here are so severe that the sentencing court's life sentence is well-founded.  Defendant

here is the older of two brothers who committed violent acts that took a man's life and held a

mother and child hostage while a one-year-old was wandering unattended.  Defendant led his

younger brother to do these acts for money.

The sentence imposed, while harsh, reflects the seriousness of the crimes Defendant

committed, the need to protect the public, and it supports deterrence.  Another part of the

sentence allows Defendant to pursue needed educational opportunities and his rehabilitative

efforts show he is taking advantage of those programs.  At this point, Defendant has only served

twenty-eight years of the life sentence that the sentencing court imposed.  What is more,

Defendant has several previous convictions.  (PSR at Page 11.)  Defendant's former crimes

include selling crack cocaine to an undercover officer, possessing marijuana, and attempting to

deliver cocaine.  (*Id*.)  Again though, the Court is impressed with Defendant's rehabilitation

achievements and encourages him to continue his efforts.  But the Court does not find that this

justifies granting Defendant's compassionate release motion relying on the potential impact of

COVID-19.

## **CONCLUSION**

In the end, Defendant's alleged medical history is not an extraordinary and compelling

reason to grant compassionate release.  And considering the § 3553(a) factors, Defendant's

sentence should not be reduced under 18 U.S.C. § 3582(c)(1)(A).  So the Court **DENIES**

Defendant's Motion for Compassionate Release.

**SO ORDERED**, this 12th day of May, 2021.

> s/Thomas L. Parker
> THOMAS L. PARKER
> UNITED STATES DISTRICT JUDGE

10