**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:92-cr-20127-TLP-2 |
| v. | ) | |
| | ) | |
| DAVID POINDEXTER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Defendant, David Poindexter, committed a series of dreadful criminal acts related to a bank robbery and getaway that took an innocent life and put others in grave danger.  When the district court imposed his sentence in 1993, that Court said "[y]ou know it is a very sad day when the court imposes sentences of this type, because no one can take pleasure in this sort of a situation, but our system of justice is such that if it is to function appropriately and to deliver just punishment, this is certainly a situation in which these lengthy sentences are appropriate. … [A]s I have said, no one takes pleasure in the fact that these offenses were committed, that the lives that were destroyed or harmed by these offenses were affected in that way or that these young men have been deprived of or have deprived themselves by their acts of any opportunity for a normal, productive, law abiding life outside of prison."  (ECF No. 31, Sent. Hrg. Tr., at PageID 329-31.)

Defendant David Poindexter now moves pro se for compassionate release under the First Step Act (FSA).  (ECF Nos. 8, 19 and 20.)  And the Government responded.  (ECF Nos. 15 &

23.)  As explained below, this Court finds that Defendant is not entitled to compassionate release.  The Court therefore **DENIES** Defendant's motion.

## BACKGROUND

1.  <u>Bank Robbery and Kidnapping</u>

In April 1992, Defendant committed a series of crimes with his older brother and co-defendant, Derrick Taylor.  At the time, Defendant was 18 years old and his brother, Derrick Taylor, was 26 years old.  Defendants robbed a bank while wearing ski masks and displaying handguns.  (Presentence Investigation Report ("PSR") at p. 2.)  They took $42,098 from the bank's vault and escaped in a stolen vehicle.  (*Id*.)  The police chased them for about 30 miles at speeds sometimes over 100 miles per hour.  (*Id*.)

During the chase, Defendant Taylor drove the stolen getaway car with Defendant Poindexter in the passenger seat.  (*Id*. at pp. 2-3.)  As Defendants headed toward an intersection on a two-lane road, Trevor McCracken was driving a Chevy Lumina two cars ahead of them.  (*Id*.)  Defendants moved into the left lane (for on-coming traffic) trying to pass the two cars ahead of them.  (*Id*.)  At that point, McCracken started to turn left at the intersection and pulled into the path of Defendants' car.  (*Id*. at p. 3.)  Defendants' car smashed into McCracken's car broad side.  (*Id.* at page 3.)  The momentum of the collision pushed them into a tree.  (*Id*.)  Trevor McCracken died as a result of the collision and his two passengers also sustained injuries.  (*Id.*)

Meanwhile, Matthew Wagner was driving his pickup truck with his passenger, Raymond Morgan, behind McCracken's car.  (*Id.*)  When he saw the collision, Wagner stopped to help.  (*Id.*)  Defendants then jumped out of their getaway car with guns in hand and ran toward Wagner's truck to steal it.  (*Id.*)  In fact, Taylor fired his gun and struck Wagner through the

driver's side window.  (*Id.*)  The government contends that Defendant Poindexter fired a second

shot into the truck shattering the glass which struck passenger Morgan in the eye.  (*Id.*)  Despite

his injury, Wagner put the truck in gear and drove away.  (*Id.*)  So Defendants had to run away

on foot.  (*Id.*)

Defendants then ran to an apartment complex on the Naval Air Station in Millington,

Tennessee.  (*Id.* at Page 4.)  At the apartment complex, Defendants saw a mother and her small

children (ages 1 and 4) playing in their yard.  (*Id.*)  Defendants told her to go inside and call an

ambulance for them.  (*Id.*)  They forced the mother and her four-year-old son inside her

apartment at gun point, leaving the one-year-old daughter outside alone.  (*Id.*)  After about an

hour, law enforcement officers arrested them without further incident.  (*Id.*)  Luckily, the

children were unharmed.

In May 1992, a federal grand jury returned an indictment charging Defendant and

Taylor with many counts related to the robbery and escape.  The charges included aiding and

abetting robbery, death incident to robbery, § 924(c) in relation to robbery, kidnapping, and

§ 924(c) in relation to kidnapping.  (ECF No. 5.)  Defendants went to trial in April and May 1993

and the jury found Defendant guilty on all but one count (aiding and abetting in the assault with

intent to kill Wagner).  (PSR at P. 1.)  At sentencing, the Court found that the PSR calculated

Defendant's guidelines correctly.  The Court applied the sentencing guidelines and the statutory

penalties and sentenced Defendant to the same sentence as Taylor—life in prison plus twenty-

five years.  (ECF No. 7.)

2.  Sentencing Hearing

During the Sentencing Hearing, the Court addressed Defendant's role in the offense.

The Court has reviewed carefully the commentary that Mr. Wilson
(Poindexter's lawyer) relied upon… on behalf of Mr. Poindexter, and I thought

about that, and I have also tried to think about the issue of whether a distinction was appropriate under these circumstances in the conduct of Mr. Taylor as the driver of the car and Mr. Poindexter as the passenger.

What I have concluded after thinking about all of this very carefully is that the presentence report is correct in its calculation of what applicable guideline is as to both of these defendants and that the level 43 is appropriate for count 2 of the indictment (Aiding and abetting Death incident to the Robbery), and that, of course, becomes the overall offense level (resulting in a life sentence).

The overall conduct in this case, even that not specifically relating to the automobile accident, reflects the state of mind with which both of these defendants acted, and the degree of recklessness is so high, the absolute disregard for the lives and safety of others, is so high that it's hard to envision a situation short of an absolute intent to kill a specific individual in a specific way that would be more egregious.

I really searched throughout the trial of this case for a way to distinguish Mr. Poindexter, because I thought the situation might be distinguishable, and I thought it might be – I didn't know exactly how the guideline issues were going to develop, but I searched for indications that he didn't really want to be participating in all of this, and I could find none, and when you examine the conduct of both Mr. Taylor and Mr. Poindexter after the accident, I think that is very, very compelling evidence as to Mr. Poindexter's full and complete participation in everything that occurred.

Of course, one can imagine a situation in which a passenger in a car was just that, a passenger in the car that was driven by another who had this sort of recklessness and disregard that we have been talking about, but I can't find that case in the facts of this case, and I can't apply that case to Mr. Poindexter, because it is just inconsistent with what the facts were overall at trial with respect to him.  He was a full and complete participant as far as the evidence shows, and the fact that Mr. Taylor happened to be the driver and (Mr. Poindexter) happened to be the passenger is just that.  Somebody had to drive, and somebody had to be the passenger.

Having said that, I think that the only other thing that had concerned the commentary to Section 2A1.1 is that the Commission has talked here about circumstances under which a downward departure might be warranted and the things you might consider in deciding the extent of the departure, and I is obvious to me that they are also the same concerns we have got in deciding whether departure was appropriate or not, so, of course, the court has considered the

defendants' state of mind; the court has considered the degree of risk inherent in the conduct; the court has considered the nature of the underlying offense conduct, and the court concludes that no downward departure would be appropriate after considering all of these factors.

*** 

THE COURT:  All right, turning, then, to the position paper filed by Mr. Poindexter, and taking each of the items as they are listed, the defendant Poindexter contests the factual statement that the defendant's vehicle rear-ended a red truck.  It makes no difference for sentencing purposes, but the evidence at trial did establish that that occurred….

Paragraph 50 (of the PSR), that relates to whether the six points should be attributed to Mr. Poindexter for Mr. Taylor's shooting of Mr. Wagner.  Mr. Wilson (Poindexter's lawyer) takes the position that this was not a reasonably foreseeable act, and it was a spontaneous act on the part of Mr. Taylor.  The court thinks that that characterization overlooks what happened as described at trial. Plainly, the proof at trial supported a finding that both Mr. Poindexter and Mr. Taylor were moving toward the truck for the purpose of trying to obtain another vehicle and that they had a common purpose of procuring that vehicle by violence.

Both approached with guns out, and under those circumstances this can hardly be seen as something that Mr. Poindexter could not have reasonably foreseen or something in which he didn't participate.  The factual scenario indicates that they were very much jointly participating in this plan of common criminal activity at that particular point in time and that Mr. Poindexter knew precisely what it was that Mr. Taylor intended to do.

*** 

THE COURT:  Count 6, does the government want to address that to any extent?

MR. ARVIN:  On Count 6?

THE COURT:  Yes, paragraph 65.  I have a thought about that.

MR. ARVIN:  Your honor, the proof at trial was that after Mr. Poindexter's .38 was recovered, the .38 he had cocked in the pictures that were taken at the bank, after it was recovered in Ms. Romero's closet, a spent round was found in it.  All the witnesses at Bethuel Road (the scene of the wreck) at the time said they heard numerous shots.  One of the officers said he (Poindexter)

5

fired a shot, and there's no question Mr. Wagner was shot by Mr. Taylor, but they said they heard more than one shot.

Of course, Mr. Ray Morgan, who was in the passenger seat, said he heard shots as Mr. Wagner was driving down Bethuel Road, and I think there's more than adequate proof in the record to support that numerous shots were fired, one of which was from Mr. Poindexter's .38 pistol.

THE COURT:  Do you have anything else to say about that?

MR. WILSON:  Other than that is stretching it a bit.  It is correct that the evidence was replete with people hearing more than one shot, but more than one shot demonstrated from sources other than Mr. Poindexter.  I mean it is so easy to relate that somebody smelled powder or something.  The gun was recovered. There was simply nothing to indicate that weapon had been fired anytime in the time of these offenses, and I just think that is stretching things.  Whether it makes a difference --

THE COURT:  It doesn't make a difference in the calculation of the guidelines.  While I think that it is entirely possible that an argument could be made that there was not proof beyond a reasonable doubt that Mr. Poindexter fired his weapon at a particular time and in a particular manner, I think for purposes of this sentencing there is proof from which the court could find by a preponderance of the evidence that the gun was fired in connection with this particular assault, but as I indicated, that is a closer question, I think, than most of the other issues, and it does not affect the overall sentence. …


68, I think that there are no mitigating rules that should be applied to Mr. Poindexter, and the court has already discussed what the proof was with respect to this incident and the reasons that that would be inappropriate.

***

THE COURT:  Right.  Then, finally, Mr. Poindexter requests a downward departure, and I think I have indicated throughout in my comments about this the reasons that I think Mr. Poindexter is a fully culpable, full participant in these various offenses.  Certainly, when one looks at Mr. Poindexter, he looks very young.  He is slight.  One would think he might be the sort of person who, perhaps when one thinks of this situation, [a]s suggested by Mr. Wilson, but the fact of the matter is that nothing about the facts of these offenses supports that sort of conclusion and could support a downward departure with respect to Mr. Poindexter.

*** 

You know it is a very sad day when the court imposes sentences of this type, because no one can take pleasure in this sort of a situation, but our system of justice is such that if it is to function appropriately and to deliver just punishment, this is certainly a situation in which these lengthy sentences are appropriate. The facts of these offenses, as the court has indicated, were most egregious. Not only did we have the offense of bank robbery, but everything that occurred subsequent to that reflected a complete and total disregard for the lives and safety of others. One individual died. Another individual sustained serious permanent injury. Other individuals were put in fear of their lives; a very, very serious group of offenses, and I think it is punishment that is appropriate under the circumstances, although as I have said, no one takes pleasure in the fact that these offenses were committed, that the lives that were destroyed or harmed by these offenses were affected in that way or that these young men have been deprived of or have deprived themselves by their acts of any opportunity for a normal, productive, law abiding life outside of prison.

(ECF No. 31, Sentencing Hearing Transcript, at PageID 313-15, 324-28, 329-31.)

3. Compassionate Release

In 2007, Defendant first moved to reduce his sentence, and the Court denied that motion. (ECF Nos. 1 & 3.)

In May 2020, Defendant moved again for compassionate release. (ECF No.19 at PageID 220.) He started with the federal Bureau of Prisons ("BOP"). (*Id.*) In his application, Defendant wrote that "[b]y virtue of his age, gender, his medical condition and incarceration, [he] is at significant risk of contracting COVID-19 and experiencing severe complications or death." (*Id.* at PageID 221.) But he did not identify any medical conditions or include any medical records. (*Id.*) The BOP advised him to move for compassionate release with this Court if he did not receive a response within 30 days from the date of his request. (*Id.* at PageID 219.) He followed BOP's advice with this motion. (ECF No. 8.)

Defendant now moves pro se for compassionate release because of COVID-19. (ECF Nos. 8, 19 and 20.) In his motion, Defendant, now 48 years old, claims he has an increased risk

of contracting the virus and is living in prison quarters with a high number of inmates who have tested positive for the deadly virus.  (*Id.*)  He requests either immediate release or to serve the remainder of his sentence at home.  (*Id.*)  In support of his motion, Defendant now focuses on these issues: (1) that he might get COVID-19, (2) that he was only 18 years old when he committed the crimes here, (3) that he is now rehabilitated; (4) that he is no longer a danger to the community, (5) that the law changed and courts no longer consider kidnapping a violent crime under § 924(c), and (6) the § 3553 sentencing factors weigh heavily in his favor for release.  (*Id.* and ECF No. 19 at PageID 206-222.)

The Government responded arguing that (1) Defendant has identified no "extraordinary and compelling reason" to justify compassionate release; (2) Defendant has failed to show that he is not a danger to the safety of the community; (3) the sentencing factors weigh against release; and (4) the BOP responded to COVID-19 by protecting inmates.  (ECF No. 15.)

Even though the result here is clear, it is not an easy decision.  Poindexter was just 18 years old when he joined his older brother in this crime spree.  Since his conviction, he has spent more than 28 years in the prison system making positive changes in his life through educational and vocational programs.  He seems sincerely motivated to be a positive role model for younger prisoners.  Of course, Defendant's efforts are laudable and impressive.  But these efforts do not qualify as extraordinary and compelling under the law.

## STANDARD OF REVIEW

The Court begins with when and under what circumstances it may modify a sentence.  A sentencing court lacks inherent authority to modify an otherwise valid sentence.  *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009).  Even so, 18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment where "extraordinary and compelling reasons warrant

[modification]."  Motions under that section are known as "motions for compassionate release."
*United States v. McCann*, No. 13-cr-52, 2020 WL 1901089, at *1 (E.D. Ky. Apr. 17, 2020).

"The compassionate release provisions were … intended to be a safety valve to reduce a
sentence in the unusual case in which the defendant's circumstances as so changed, such as by
terminal illness, that it would be inequitable to continue the confinement of the prisoner."
*United States v. Poole*, 472 F. Supp. 3d 450, 453–54 (W.D. Tenn. 2020) (citing S. Rep. 98-225,
at 121 (1983)) (internal quotation marks omitted).

In the First Step Act of 2018, Congress amended that statute to allow a prisoner to move
for compassionate release on his own behalf.  Pub. L. No. 115-391, 132 Stat. 5194, 5239.
Congress's intent was to "[increase] the use and transparency of compassionate release."  *Id.*
That section now provides that

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion
> of the defendant after the defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> . . . after considering the factors set forth in section 3553(a) to the extent that they
> are applicable, if it finds that–
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by
> the Sentencing Commission …

18 U.S.C. § 3582(c)(1)(A).

And in the United States Sentencing Commission Guidelines Manual, the Sentencing
Commission has published a policy statement addressing the standards for compassionate
release.  *See* U.S.S.G. § 1B1.13 ("Policy Statement").  That Policy Statement directs courts to
determine that "the defendant is not a danger to the safety of any other person or to the
community," before reducing a term of imprisonment under § 3582(c)(1)(A).  (*Id.*)  The

Application Notes to the Policy Statement describe four categories of "extraordinary and compelling reasons" that may justify compassionate release under § 3582(c)(1)(A): (A) the medical condition of the defendant; (B) the age of the defendant; (C) family circumstances; and (D) other reasons.  *See* U.S.S.G. § 1B1.13, cmt. N.1(A)–(D).

And recently, the Sixth Circuit has explained that before granting compassionate release, a district court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, (2) ensure that such a reduction accords with applicable policy statements issued by the Sentencing Commission, and (3) consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a).  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).  Even so, the Sixth Circuit made clear that when an inmate brings a motion on his own behalf, courts need not consider the § 1B1.13 policy statement. *Elias*, 984 F.3d at 519–20.  Instead, the district court has full "discretion to define 'extraordinary and compelling' on their own initiative," and the court cannot use the Policy Statement as an independent basis to deny a defendant-filed motion.  *Id*.

Finally, Section 3582(c)(1)(A) requires pro se defendants to first exhaust their administrative remedies with the BOP before seeking relief in the district court.  *United Sates v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).  A prisoner, therefore, may move for compassionate release in federal court after he has either (1) "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his own behalf, or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

With these standards in mind, the Court will now address the merits of Defendant's motion.

## ANALYSIS

### I. Exhaustion

For starters, the Court has to address whether Defendant exhausted his administrative remedies.  Defendant provided documentation of his BOP request, and the Government did not dispute that he properly exhausted.  (*See* ECF No. 23.)  But Defendant petitioned the BOP for release on different grounds than he gives here.  With the BOP, Defendant petitioned for compassionate release based on COVID-19, his medical history and age, and his seventy-three-year-old mother's health limitations.  (ECF 19.)  Here, he glosses over his mother's health.  (*See* ECF No. 8.)  Even so, the Court assumes Defendant properly exhausted, as it is undisputed.

### II. Extraordinary and Compelling Circumstances

Next, the Court will address whether Defendant presents extraordinary and compelling circumstances to justify release.  He does not.

Defendant gives many reasons why he believes his case is extraordinary and compelling. He argues that the Court should consider them either alone or together.  He argues that they justify his immediate release under § 3582 of the FSA.

#### A.  COVID-19

To start, Defendant claims that his current age (48 years old) and the BOPs failure to mitigate the spread of COVID-19 places him at an increased risk of contracting a severe case of the virus.  (ECF Nos. 8 and 19.)

As for COVID-19, Defendant argues that his age along with his history of passing out and a high rate of infection at his prison, give him a heightened risk of catching a severe case of COVID-19.  (ECF No. 8 at PageID 39.)  But Defendant includes no information about an underlying health condition or any specifics about the allegedly inadequate medical care in his

11

facility.  He also does not attach any medical records to prove that he has an underlying condition.  And so, he provides almost no support for his request here.

In contrast, the Government contends that Defendant fails to show extraordinary and compelling reasons, because he has not identified a medical condition that places him at high risk.  (ECF No. 15 at PageID 181–82.)  And the Government emphasizes that the BOP has a detailed protocol for responding to the COVID-19 pandemic, which aims to ensure that inmates stay protected from exposure and receive the medical care they need.  (*Id.* at 185–86.)

Defendant alleges that he has a history of passing out.  (ECF No. 9 at PageID 39.) Beyond that assertion however, Defendant includes no medical records showing a significant risk of serious illness if he were to contract the virus.  Plus, the Centers for Disease Control and Prevention has not identified passing out as a potential condition that may increase the risk of severe illness from COVID-19.[1]  And the Court finds that this factor alone cannot justify release especially given the efforts the BOP has taken to reduce the spread of COVID-19.[2]  The BOP houses Defendant at Yazoo City Medium Security facility.  As of December 10, 2021, that facility reports that zero inmates are positive for the virus and that 2723 inmates have taken a COVID-19 vaccine.  (See https://www.bop.gov/coronavirus/, last visited December 13, 2021.)

Defendant is now only 48 years old and is not in an age range that places him at high risk. The bottom line is that Defendant fails to show that his health presents extraordinary and compelling circumstances warranting compassionate release.

Although this Court recognizes that prison inmates have an increased risk of exposure to COVID-19, Defendant's claim based on his fear of contracting COVID-19 alone, without more,

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 13, 2021).
[2] *See* https://www.bop.gov/coronavirus/ (last visited December 13, 2021).

is not an "extraordinary and compelling" circumstance justifying release. *United States v. Scarborough*, 821 F. App'x 598, 600 (6th Cir. 2020).

What is more, in *United States v. Lemons*, the Sixth Circuit held "we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." 15 F.4th 747, 751 (6th Cir. 2021)(citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Because Defendant here has access to the vaccine, his fear of COVID-19 alone fails to warrant release.

For the reasons noted above from the *Scarborough and Lemons* cases, this Court finds that Defendant's claim based on his fear of contracting COVID-19 lacks merit.

## B. Change in the Law—§ 924(c)

Defendant next argues that the Supreme Court changed the law on § 924(c) holding that it no longer applies to using a gun in a kidnapping. (citing, *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319, 2336 (2019) and *United States v. Knight*, 936 F.3d 495, 497(6th Cir. 2019).) [3] He adds that if the court were to sentence him today for the same conduct, he would get a lower sentence because the conviction on Count 8 would not stand.

The case of *United States v. Jarvis* clarifies this issue. *See* 999 F.3d 442 (6th Cir. 2021). In *Jarvis*, the Sixth Circuit affirmed a district court's ruling that "non-retroactive changes in the

---

[3] He might have a valid argument for habeas relief but not for compassionate release. *Davis* held that the residual clause defining a crime of violence in § 924(c) is unconstitutionally vague. Then in *Knight* the government conceded that kidnapping no longer qualifies as a crime of violence under § 924(c). So because Defendant's conviction in count 8 for § 924(c) related to kidnapping, it might be constitutionally suspect. That issue however is better suited for a motion under 28 U.S.C. § 2255. Because Defendant has already sought relief under § 2255, he must seek permission to pursue a second successive § 2255. That permission must come from the 6th Circuit. So this Court will enter a separate order transferring this constitutional question to that court.

law could not serve as 'the extraordinary and compelling reasons' required for a sentence reduction." *Id* at 442. The defendant in *Jarvis*, committed a string of offenses including four bank robberies and using a firearm in relation to those bank robberies. After the Supreme Court decided *Rosemond v. United States*, 572 U.S. 65 (2014), Defendant successfully argued that the court should resentence him based on the change in the law. *Jarvis*, 999 F.3d at 443.

The district court then sentenced him to 40 years, including five years on the first § 924(c) conviction and 20 years for the second, along with 15 years on the bank robbery convictions. *Id.* In 2018, the First Step Act changed the law on the second § 924(c) conviction. Like Poindexter, the defendant in *Jarvis* argued that if the court were to sentence him today, the Court would not sentence him to 20 years on the second § 924(c). He argued, therefore, that the court should release him under compassionate release because the change in the law amounted to extraordinary and compelling reasons.

The Sixth Circuit disagreed. In its opinion, the court noted that "Congress expressly chose not to apply this change to defendants sentenced before the passage of the Act." *Id.* (citing First Step Act §403b; *Richardson,* 948 F.3d 745–46, 753). The *Jarvis* court pointed out that courts ruling on a compassionate release motion should first decide whether there are extraordinary and compelling reasons supporting the sentence reduction and then, and only then, would the court consider the § 3553(a) factors to determine what kind of reduction to grant. *Jarvis*, 949 F.3d at 443 (citing *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020)).

Also like Poindexter, the defendant in *Jarvis* argued that the Covid-19 pandemic combined with the change in the law amounted to extraordinary and compelling reasons to justify his release. Relying on the case *United States v. Tomes*, 490 F.3d 500, 505 (6th Cir. 2021), the court held that this non-retroactive feature of the FSA could not alone serve as an

"extraordinary and compelling reason" under § 3582(c)(1)(A)(i).  *Jarvis*, 999 F.3d at 443.  As

the *Jarvis* court noted, *Tomes* holds that "the sentence reduction statute, § 3582(c)(1)(A), does

not give district courts a license to 'end run around Congress's careful effort to limit the

retroactivity of the First Step Act's reforms.'" *Id.* at 443–44 (citations omitted).  The principal

announced in *Tomes* also applied in *Jarvis*.  *Id.* at 444.

 Since Jarvis committed the bank robberies before the enactment of the FSA, the court

would not consider the non-retroactive change in the law an extraordinary and compelling reason

justifying a compassionate release.  *Id.* at 446.  But Jarvis tried to take it a step further.

 Much like Poindexter's position here, Jarvis argued that the change in the law along with

the Covid-19 pandemic, his high blood pressure and rehabilitative efforts all combined to amount

to extraordinary and compelling reasons for his release.  The Sixth Circuit rejected that position

succinctly.  "But adding a legally impermissible ground to three insufficient factual

considerations does not entitle a defendant to a sentence reduction." *Id.* at 444.  In fact, the

*Jarvis* court found, "if every defendant who received a longer sentence than the one he would

receive today became eligible for compassionate release, the balance Congress struck would

come to naught." *Id.*

 The *Jarvis* court explains that a sentencing court may consider the change in the law as a

§ 3553(a) factor, but only if the defendant first establishes that there is an extraordinary and

compelling reason for a sentence reduction.  *Id.* at 485; see also *United States v.* Maxwell, 991

F.3d 685, 688 (6th Cir. 2021).  Here, neither Jarvis nor Poindexter has done that.

 To sum up its ruling, the Sixth Circuit said, "*Tomes*, we respectfully submit, leads to just

one conclusion: that it excluded non-retroactive First Step Act amendments from the category of

extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors." *Jarvis*, 999 F.3d at 446.

Applying the *Jarvis* ruling to Poindexter, this Court finds that the change in the law on the 20-year consecutive sentence for the second 924(c) conviction and the change over whether kidnapping is a violent crime do not establish an extraordinary and compelling reason for release here. Secondly, adding that change in the law to the other grounds that Poindexter asserts does not make those considerations any more compelling or extraordinary than they were by themselves. If the Court were to consider the change in the law on Poindexter's behalf, that change might be relevant were the Court to consider the § 3553(a) factors. But, as noted above, this Court only considers the § 3553(a) factors if the defendant first establishes extraordinary and compelling reasons. He has not done so here.

### C. Defendant's Age

Citing *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), Defendant claims the sentencing court erred by sentencing him to life without parole for acts he committed when he was 18 years old. Because of his age at the time of the crime, he argues that the sentencing court improperly failed to consider the factors those cases now require for sentencing a minor.[4] As for his claim of minor status, Defendant relies on the definition of "youth" in

---

[4] This is another constitutional issue improper for compassionate release (unless it is part of the 3553 factors). But it might be appropriate for a motion under 28 U.S.C. § 2255. Recently in *Jones v. Mississippi*, 141 S. Ct. 1307, 1316 (Apr. 22, 2021), the Supreme Court held that the sentencing court need not make a fact finding of permanent incorrigibility, but must consider youth like a mitigating factor before imposing a life without parole sentence. Defendant will need permission from the 6th Circuit to petition a second time under § 2255 before he can bring

section 608 of the FSA establishing a mentorship pilot program.  (Section 608(c), Pub. L. No. 115-391, 132 Stat. 5194, 5239.)  Section 608(c) defines youth as anyone under the age of 21. Since he was only 18 when he committed the acts here, Defendant argues that the sentencing court should have treated him as a minor.

Although his age at the time of the criminal acts almost 30 years ago might meet a current definition of "youth" in the FSA, he was over 18 years old.  Under federal law, an 18-year-old is an adult, not a juvenile.  18 U.S.C. § 5031 ("a 'juvenile' is a person who has not attained his eighteenth birthday…".)  Of course age is a proper consideration for a sentencing court employing the factors under § 3553(a).  But just because Defendant was fairly young back in 1992 when he committed the robbery and kidnapping here, his age does not provide an extraordinary or compelling reason justifying a compassionate release now.

### D.  Rehabilitative Efforts

He also argues that his rehabilitation efforts while incarcerated support compassionate release.  (ECF Nos. 8 and 19.)  But post-conviction rehabilitation alone does not provide a valid basis for compassionate release.  See 28 U.S.C. § 994(t) and see also, *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020).  That said, rehabilitation can be a factor to consider along with other factors in the compassionate release determination.  *United States* v. Rodriguez, 451 F. Supp. 3d 392, 405 (E.D. Penn. 2020).

Although Defendant did not argue here that his mother's age and health support compassionate release, he did raise this issue in his petition to the BOP.  (*See* ECF No. 19 at PageID 222.)  Defendant alleged in his petition to the BOP that his mother is seventy-three and

---

that claim, however.  So this Court will include this claim as part of the separate order transferring this constitutional issue to that court.

suffers from severe bursitis in her shoulder and has knee problems. *Id.* Defendant contends he cared for his mother before his incarceration and his release would allow him to care for his mother once again. *Id.* Defendant does not provide proof of his mother's medical conditions, nor does he provide proof that his mother needs his care. And so, this Court finds that Defendant's mother's age and health are not extraordinary or compelling reasons justifying compassionate release for Defendant.

Defendant argues that he is no longer a danger to the community. (ECF No. 8 at PageID 43.) He claims that, although he committed heinous acts of violence leading to his incarceration, he claims that his record before and since show that he is not dangerous. (*Id.*) What is more, he contends that the BOP's decision to house him in a medium security facility—Yazoo City Medium—is evidence that he is no longer dangerous. (*Id.*) The problem for him is that he got caught on a day when he and his brother committed terrible acts of violence. During their escape from the bank they robbed, they caused a car wreck that took the life of Trevor McCracken. They then shot at the driver and passenger of another vehicle. Next they took a mother and child hostage at gun point until officers arrested him and his brother. Now he claims that this Court should find that his lack of violence and rehabilitative efforts combine to show extraordinary and compelling reasons to release him from custody. The Court also finds that this argument is not persuasive.

The Court recognizes Defendant's rehabilitation efforts while in custody. (*See* ECF Nos. 8 and 19.) Defendant has maintained academic success while incarcerated and his prison record is a positive one. And although this Court commends Defendant for his determination and discipline, as noted above, Congress considered that defendants may argue that their rehabilitation is so extraordinary to justify release. But Congress said such rehabilitative efforts

was not enough.  28 U.S.C. § 994(t)("Rehabilitation of the Defendant alone shall not be considered an extraordinary and compelling reason…"– for compassionate release.)

In the end, Defendant has not established extraordinary and compelling reasons to justify compassionate release.  Because Defendant fails to show extraordinary or compelling reasons to justify compassionate release, this Court need not address the §3553(a) factors.  That said, the Court will do so in the interest of completeness.

### E.  Combination of Reasons

The Court now considers all of Defendant's alleged reasons for release combined with each other.  Considering all of the above reasons together, this Court still finds that Defendant has not shown extraordinary and compelling reasons for compassionate release here.  Next the Court will address the factors under § 3553.

## III.   18 U.S.C. § 3553(a) Sentencing Factors

Even if the Court were to find extraordinary and compelling reasons to justify release, the Court still finds that the § 3553(a) sentencing factors weigh against immediate release.  These factors include

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

19

As for the nature and circumstances, this Defendant committed grave crimes.  In the attempted escape from the bank robbery, Defendants took an innocent life.  Then they shot at the driver of another vehicle.  They then ran to a community and kidnapped a young mother and her child.  Of course, Defendant was young when he committed these crimes and that factor weighs in his favor.  Also favoring Defendant are his rehabilitative efforts.  But these considerations do not erase the acts he committed.

In fact, the sentencing court found that his actions were indistinguishable from his co-defendant's.  "I really searched throughout the trial of this case for a way to distinguish Mr. Poindexter, because I thought the situation might be distinguishable, and I thought it might be – I didn't know exactly how the guideline issues were going to develop, but I searched for indications that he didn't really want to be participating in all of this, and I could find none, and when you examine the conduct of both Mr. Taylor and Mr. Poindexter after the accident, I think that is very, very compelling evidence as to Mr. Poindexter's full and complete participation in everything that occurred…. Of course, one can imagine a situation in which a passenger in a car was just that, a passenger in the car that was driven by another who had this sort of recklessness and disregard that we have been talking about, but I can't find that case in the facts of this case, and I can't apply that case to Mr. Poindexter, because it is just inconsistent with what the facts were overall at trial with respect to him.  He was a full and complete participant as far as the evidence shows, and the fact that Mr. Taylor happened to be the driver and (Mr. Poindexter) happened to be the passenger is just that.  Somebody had to drive, and somebody had to be the passenger."  (See Transcript of Sentencing Hearing, ECF No. 31 at PageID 314.)

So his youth does not favor him as much it might seem at first blush.

20

That court also noted, "[t]he overall conduct in this case, even that not specifically relating to the automobile accident, reflects the state of mind with which both of these defendants acted, and the degree of recklessness is so high, the absolute disregard for the lives and safety of others, is so high that it's hard to envision a situation short of an absolute intent to kill a specific individual in a specific way that would be more egregious." (See Transcript of Sentencing Hearing, ECF No. 31 at PageID 313-314.) Having presided over the trial and heard all the evidence, that court found that a life sentence plus 25 years for Defendant was appropriate.

The sentence that court imposed, while long—and perhaps longer than Defendant might get if the court were to sentence him today—still reflects the gravity of the crimes that Defendant committed. And at this point, Defendant has only served twenty-eight years of the life sentence that the sentencing court imposed. This Court finds that the sentence here serves the important goals of protecting the public, deterrence, and promoting respect for the law. To adjust his sentence now would lead to disparities in sentencing. And so this Court finds no basis to alter that result.

But upon reviewing the sentencing factors, Court finds that Defendant's sentence reflects the seriousness of his offense and affords adequate deterrence from criminal conduct. This Court further finds that, considering the factors under § 3553(a), it should not disturb Defendant's sentence.

## CONCLUSION

In the end, Defendant's alleged medical history is not an extraordinary and compelling reason to grant compassionate release. And considering the § 3553(a) factors, Defendant's sentence should not be reduced under 18 U.S.C. § 3582(c)(1)(A). So the Court **DENIES** Defendant's Motion for Compassionate Release.

**SO ORDERED**, this 30th day of December, 2021.

s/Thomas L. Parker
_____
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE